Ms. Weichel, you may proceed. Thank you, Your Honor. Good morning, Cheryl Weichel for the appellant, and may it please the Court. Your Honors, this case concerns what is at bottom a very simple issue. Namely, what notice is due a person after a once-in-a-generation pandemic means that she receives no notice about the case for a two-year period. We argued before the Court below, and we are arguing before Your Honors, that we are entitled, that my client is entitled to some notice that the case has restarted after a delay of that length, and a judgment entered without that notice is void. A judgment entered without that notice violates my client's fundamental due process rights. This is a principle that goes back as far as Mullane v. Central Hannover Company. When the Supreme Court there stated that the 14th Amendment requires that due process means that process be provided not just in terms of summons, but in terms of every step of a case, that a party always has the right to know every step of the way that something is happening in their case, and to make the determination for themselves whether to appear and contest. That did not happen here, and rather than hold an evidentiary hearing on the issue, the Court below elected to dismiss our petition entirely. We believe respectfully that was error. And so this is, at bottom, a very simple issue. Does service of process continue to vest a court with jurisdiction when there is a two-year delay caused by the pandemic? And we think that the answer is no. Counsel, did your client file an answer in that two-year period of time? The there was a summary judgment entered before the two-year period happened, Your Honor, and then during that two-year period in the case, nothing happened. In fact, when the case resumed, PHH had taken over as a successor in interest for the original plaintiff. So the case goes on essentially standby for two years during the pandemic. When it comes back, there's a new plaintiff who files a series of motions with no notice to my client. Now, the appellee has been saying, well, we did provide notice, but there was no evidentiary hearing on that point. And so as far as my client is concerned, she was looking for notices from AQUIN, which was the original plaintiff in the case. The case is on pause for two years. Nothing happens in the case during that two-year period. Nothing is filed. The moratorium is going on. Then PHH comes in as the new plaintiff. Files the sheriff's sale, proceeds with the foreclosure without notice to my client. Our argument is quite simply that when you have a two-year period during which nothing happens, and then a new plaintiff comes in, my client is entitled to notice of these proceedings, and that a judgment entered without that notice is void. That is our argument. Now, there are procedural issues here, and I'd like to address them to some extent. The first is that, yes, this is not a service of process issue. But as we cited in our brief, in both our original brief and our reply brief, due process extends beyond service of process. Due process is a flexible concept. One of my law professors in law school used to say that due process should really be called, what process is fairly due? What is fair? The answer is, what a person would want due to them under the circumstances so they can decide whether to contest the case. Here, what we have is no notice at all. Yes, we are not contesting service of process. But what we are saying is that a two-year period where a new plaintiff comes in at the end requires notice just as much as service of process does. And this is a matter of fundamental fairness, which is all due process is. And all of us would want to know if a case has resumed. Now, one of the arguments that was made was, well, there was notice in the paper. But that's to make an actual attempt to notify the other party. And that brings us to the in re adoption of A.W., which is something that was litigated both before the court below and we've talked about at length in the briefing. In re adoption of A.W., our position is remains good law, because the case that overruled it was itself overruled by the Illinois Supreme Court. And in re the adoption of A.W. has been cited approvingly multiple times in the past few years. But even putting that aside, the rule that was enunciated in that case is a good one. It makes sense. If you're going to make a ruling, there needs to be some kind of notice to the other party that there's going to be a hearing. So what we are asking for is nothing more than that fundamental recognition that before any kind of order is entered that is adverse to a party, there must be that notice. Now, there was no evidentiary hearing before. We lost her. We did. Um, can we reach out to her to let her know that if she's still talking, we can't hear her? Yeah, we'll reach out to her now. And just note the time that we're at. Yeah, that was strange. Yeah. Justices, do you want us to go ahead and put Mr. Halberg back into the waiting room until we get Ms. Wieckicki back? Yes, please. Okay. No offense meant, Mr. Halberg. Okay. So what was your fun case before us, Liam? The shooting at the Kankakee Courthouse. Oh, my God. Immunity, immunity, immunity. Do you have a consensus? As to 4102 immunity, yes. The only issue, and I disagree with Linda and Joe, but I will alter my, I'm the right, I'll alter it to go along with them just because I don't feel very strongly about it. The judge basically, a little bit misstated the law, arguably, but refused to go along with it. Refused to allow an amendment to the complaint after it was dismissed. They never got it, and it was the first time it was dismissed. So not even a first amendment. So they think that was an abuse of discretion. They should have been given an opportunity to try to replead, to fall into the ambit of the alternative immunity circumstance. I would kill it, but I don't feel so strongly about it that I can't rewrite it to allow that. I mean, normally, when we say no to amended complaints, it's the third amendment. Right, right. Not usually the first. Right. All right. We got in touch with the attorney. They had a power outage at her office, but she is getting back logged in now. So we should see her hopefully in the next few minutes. Great. And Mr. Hallberg definitely can't hear us, right? No, he can't. Checking. But that should be. On both sides, Liam. What was that? Good lawyering on both sides. Very good lawyer. Very good lawyer. I mean, I really don't think the plaintiffs are ever going to be able to get to where they want to go, but they probably, I mean, I mean, all three of us agreed we would have let them file an amended complaint. The question was whether it was an abuse of discretion. Right, okay. But yeah, a lot of speculation. Sometimes you do. The other problem is they didn't tell the judge. They didn't tell the judge. They didn't file a motion with an amended pleading attached or anything like that. She basically told him not to just appeal me. Oh, not a good move. All right. We got both of our attorneys back. So I'm going to go ahead and bring them both in. We stopped the timer at nine minutes. So we're going to let her know that she's got nine minutes to go. Great. So we'll recall the case when both attorneys are back in the room. All right. Please recall the case. Case 322-0354, PHH Mortgage Corporation Appellee v. Kim Resrepo Appellant. Ms. Weichel, we stopped the timer when we lost you. And you have approximately nine minutes left. Please continue. Thank you, Your Honors. And I do apologize for the power outage. Essentially, our bottom line point is this. When you have a once-in-a-generation pandemic that causes a case to be paused for two full years, and I cannot emphasize enough, there was a two-year period during which my client was still living in the house, looking for notice from something called Ocwin, because my client was pro se. So she's looking for something called Ocwin. Nothing's happening in the case. A reasonable person is going to assume after two years, the case isn't going on anymore. And when you get something from PHH Mortgage, even if she did, which she provided an affidavit to the lower court saying she never got any notice at all. But even assuming she did, as the plaintiff, Appellee, was saying in the court below, she's not going to know what PHH Mortgage is. She's looking for something from Ocwin. She got no notice of the change in plaintiff. She got no notice of the sheriff's in. And so the question of mootness has also been brought up. And that's why we're making this fundamental argument, because she was deprived of the in the first place. The argument of the Appellee at bottom is it would have made no difference. But even if that was true, my client was deprived of the choice. Our entire legal system is based on the fundamental premise of the right to choose. The right to choose whether or not to appear in a case. That's what service of process is for. The right to appear and the right to choose whether or not you want a jury trial. That's why there are jury waivers. The right on whether or not you have a preliminary hearing in a criminal case. You can waive that. But every single time you get the choice. That's why Rule 11 exists. That's why we tell people about even the most routine status hearings. That's why we have orders. So that everyone always has notice of every step of the way. Here that didn't happen. And in a final insult, my client was even deprived of her day in court to say that she didn't get her day in court because that's all she asked for was an evidentiary hearing to tell the court below that she didn't get her day in court about the sheriff's sentence. She just wanted to say that she did not get notice. And as a result, there was a deficiency judgment entered against her. She wanted the opportunity to decide whether or not she was going to contest the sheriff's sale, which was her right under the law. She didn't get that. And so now there's a deficiency that she would not have had if she had been given notice. Because the truth is, we do not know that it would have made no difference. On a practical level, I've handled a lot of cases like this, where sometimes there is an agreement that to waive the deficiency in exchange for not objecting to the sheriff's sale. That is a pretty standard thing that happens in these cases. My client didn't get that opportunity. And instead, my client finds out about the sheriff's sale from a note left on her door. That's not due process. And this is not an ordinary case where my client just stopped paying attention to the sheriff's sale. Now, we can all talk about the parade of horribles that can result if your honors do grant our motion and send this back for an evidentiary hearing. But we are not asking this court to upend the entire foreclosure system. What we're saying is that my client deserves the opportunity to convince the court below that she did not get notice of the sheriff's sale, because anything else is to deprive her of her day in court to say she didn't get her day in court. And that is essentially what happened here. Due process requires more than that. It does not damage in any way the system of justice we have. It does not damage the foreclosure system. For one hearing, for my client to have the opportunity, as required by due process, as Mullane and In Re Adoption of A.W. made clear, to show, to establish, to bring in our witnesses and say to the court below, no, we did not have notice. The balance of externalities is clearly in favor of my client here. There is no prejudice to the appellee from having to provide notice and prove they provided notice. But there is a lot of prejudice to a single person who now has to pay a deficiency judgment as a result. Now, the bank is concerned about, well, this is moot. What happens to the house now that it's been sold? But the reason we have the voidness doctrine is because we're concerned with getting this right. At the end of the day, the most important thing to this system is making sure that justice has been done, that we get the result right. And it would be the epitome of elevating form over substance to say, well, yes, you're saying you never got notice. And yes, we never gave you an opportunity to show you never got notice. But someone else has your house now and you owe the money. So you're out of luck. That's not how the system works. Mullane demands more. The 14th Amendment demands more. And this court's own precedents demand more. So we would respectfully request that this court reverse the decision of the court below and require the court below to hold an evidentiary hearing, because this one hearing is what my client is asking for. It will not upset the great balance of the universe to give my client her day in court, but it will upset the balance of due process to deny it. And with that, I'd reserve the balance of my time. Thank you, Your Honor. Either Justice Peterson or Justice Albrecht have any questions? I do not. I do not. All right, Ms. Weichel, you'll have an opportunity in rebuttal. Mr. Hallberg. Please, the court. My name is Caleb Hallberg, and I represent the appellee, PHH Mortgage Corporation. This is a case where the appellant borrower does not legitimately challenge that she was duly served, nor does she dispute that she participated in the case by appearing at a series of premediation proceedings and showing up to court for at least one hearing. Nevertheless, she never responded to the foreclosure complaint, and a default judgment and judgment of foreclosure was entered against her, unopposed. After the property was sold to a third party, who was not a party to this case, pursuant to that valid foreclosure judgment, the appellant borrower boldly asserted that she did not receive notice of the sale or of the motion to confirm the sale, due to what she groundlessly claims now was, quote, unquote, fraud. When did the default judgment occur in relation to the close-down of the courthouse because of the COVID epidemic? It occurred well before the close-down judge. The default judgment was entered in 2019. So there was no answer, the failure to answer occurred prior to the COVID crisis? Correct, well before. This case was filed in 2018. The briefing shows the exact dates. I don't have them off the top of my head, Judge, but the case was filed in 2018. Service, I believe, was properly effectuated in 2018, and the borrower appellant failed to answer at the very least before 2019. This isn't a situation where the court was closed down due to the pandemic, and that caused some sort of failure to file the case or otherwise plead to the allegations. Counsel, can you adjust where you are in relationship to your microphone? It's getting difficult to hear you. Can you hear me now? Yes. We did hear your answer, but it's better. Right, so there was no issue caused by the pandemic that caused the borrower to choose to fail to answer or otherwise plead to the allegations in the complaint. Instead, what she did is she ignored it, and this was in 2019. Therefore, the property was sold once the pandemic, once the moratorium on foreclosures was lifted. The case proceeded because the court had jurisdiction. The case proceeded, and the property was sold to a third party who's not a party to this case. Ms. Chavez is her name, pursuant to a foreclosure judgment that was valid. Now, the borrower claims that she wasn't provided with a notice of sale after she was served, after jurisdiction existed. She wasn't provided with notice of the motion to confirm sale. However, the record of the trial court shows that the bank's counsel, PHH's counsel, when they sent notice of the sale and when they sent notice of the motion to confirm the sale, they swore under penalty of perjury that it was sent to the address on the service list, including the borrower appellant. The record establishes that notice was sent. Furthermore, under Illinois law, there's a presumption of delivery. The mere fact that the borrower claims that she did not receive the notice is insufficient to demonstrate that service was in the order. Even if the borrower appellant could somehow establish that the bank's attorneys failed to send her that notice, that would only result in the order confirming sale being voidable, not void. And this is a good point to talk about the NRAAW adoption case and the Marzano case, which specifically overruled that precedent. According to Marzano, which is still good law in Illinois, when a litigant who the court has jurisdiction over, if a notice of a motion or some order is not sent, that does not result in that order being void. It results in it being voidable. It's true that the Marzano case was also overruled in part by the Illinois Supreme Court, but it was only overruled with respect to an issue that's not relevant to the facts of this case. What the Supreme Court said in the Mitchell case was that Marzano was overruled to the extent it stood for the limited proposition that jurisdiction could be waived retroactively. So, for example, where a defendant files an appearance after the case has been going on for a while, there were certain courts that were saying that the filing of that appearance waived any objection to jurisdiction retroactively. All the Mitchell court said in the Illinois Supreme Court was that, no, it doesn't waive an objection to jurisdiction retroactively. But frankly, that has nothing to do with the facts of this case. So, Marzano is still good law and there are plenty of cases supporting the proposition in Marzano that when a litigant doesn't receive notice of a motion or of an order that's entered after jurisdiction is established, that results in the order being voidable, not void. So that is good law. And therefore, because the order in this case was voidable and not void, the relevant inquiry is actually whether the borrower suffered any prejudice as a result of the order confirming the sale, which itself was a result of a valid foreclosure judgment. The borrower appellant in this case has completely failed to articulate any prejudice that occurred to her client in this case. And it bears repeating that a default judgment was entered against her prior to any of this happening in 2019. Furthermore, it really needs to be emphasized that this appeal is moot for multiple reasons. The Supreme Court Rule 305K protects third-party buyers from appellate reversals regarding the property as in the state of the judgment pending appeal. That didn't happen in this case. Furthermore, the Illinois Mortgage Foreclosure Law itself, specifically Section 5-15-1509C, bars any claims of parties that were parties to the case to the foreclosure after a property is sold to a third party and the deed is recorded. That happened in this case. Finally, Section 2-1401E provides that a third-party purchaser's interest in title cannot be affected by any ruling on a 1401 petition.  These provisions are all similar and typically the only exception is where the court lacks jurisdiction. But in this case, the borrower appellee admits that she was served and that she participated in the case. Personal jurisdiction in the underlying foreclosure is not legitimately in dispute. Instead, the argument that the borrower appellant makes is that there was a moratorium on foreclosures which caused a delay and therefore, apparently, the plaintiff would be required to serve the borrower with process or something above and beyond the regular mailing of a notice of motion, which is allowed under Supreme Court rules, in order to reestablish personal jurisdiction. So the borrower appellant's argument is essentially that the pandemic caused personal jurisdiction to go away for some reason. That is not the case. The bank was not obligated to serve her again and that's simply not the law in Illinois, nor should it be. If it were, then this court would be forced to determine how severe any delays in the personal jurisdiction when there's no legitimate dispute that the litigant was duly served under the law. The borrower appellant had her day in court, but she chose not to contest the merits of the foreclosure case. She allowed a valid judgment of foreclosure to be entered unopposed. This is not a violation of due process because she had a meaningful opportunity to be heard and she waived that right. Now, you heard the appellant argue that she wasn't looking for a notice from PHH specifically because she was looking for a notice from its predecessor, Auckland Loan Services. But PHH was substituted as the party plaintiff in 2019 at the time the judgment was entered and the citation to the record is C-171. The appellant chose to be unrepresented in the lower court in pursuit of due process and she did this at her own peril. She still had a duty as a litigant to follow her own case and she did not do that. You also heard it argued that the borrower appellant didn't receive notice of the sale. A court has very limited bases to not confirm a sale after a valid judgment of foreclosure has been entered and those are articulated within the Illinois Mortgage Foreclosure Law itself. Notice of the sale itself is one of those bases that could challenge confirmation, but the Mortgage Foreclosure Law itself specifically states when that needs to be done and it needs to be done prior to the confirmation of the sale. Therefore, the borrower appellant's argument that she didn't receive notice of the sale was moot by the time this 1401 petition was brought up in the first place because the statute specifically articulates that notice could not be challenged after confirmation of the sale. Unless your honors have any questions for me, I'll save the rest of my time and rest on the grease. Justice Peterson or Justice Albrecht, any questions? No. I do not. All right. Thank you, Mr. Hallberg. Ms. Wyckle, I apologize. Ms. Wyckle was our last case. No worries, your honor. Mr. Hallberg is a very capable advocate, but I would push back on his statement of our case because it's not quite accurate. We're not saying that my client needed to be reserved with process. We're saying that my client needed to be served with notice and that didn't happen. Now, Mr. Hallberg's argument boils down to, as I said before, it would have made no difference. And I'd like to talk about two different aspects of that argument if I might. The first is that my client chose to be pro se. My entire practice is for people who can't otherwise afford lawyers. The reason that I do this work is because there are so many people facing eviction, foreclosure, incarceration in Illinois who cannot afford lawyers. We in Illinois indulge in the convenient fiction that people who proceed pro se have the same knowledge as attorneys. And we do that so the system can function. But every time we do that, we are indulging in a fiction, as we are all aware. And there is a limit to how many angels we can dance on the head of this pin. Because at the end of the day, you're talking about somebody's home. And what we're basically doing right now is we are saying, we are expecting you, if you cannot afford an attorney, we are expecting you to know the law to the same extent as an attorney, follow all of these esoteric rules, know the Illinois mortgage foreclosure law to the same expertise as Mr. Hallberg. And if you don't, well, you're out of luck. Due process demands more than that, especially when a pandemic comes in. Now, I want to emphasize this point, because we are not talking about a commercial dispute between businesses. We are talking about a person's home. And Mr. Hallberg's argument boils down to, because my client was defaulted earlier in the case, no harm was done by the subsequent lack of notice. But what that basically means is, if you don't know what you're doing and get defaulted, you can't contest the sale later, no matter what the sale was for. And that brings me to the second point, which is, yes, there was harm. Yes, there was prejudice. There was a deficiency, as we pointed out multiple times in both the motion before the court below and our appellate brief before your honors. And the reality is that these deficiency judgments, as your honors are very well aware, are often either negotiated down, negotiated out of existence in exchange for waivers, negotiated away as part of cash for keys agreements, or simply challenged where the sale is unreasonable or it is too low. And my client had the opportunity for none of those things. Now, Mr. Hallberg talks about, again, the parade of horribles that will ostensibly result if my client is given the opportunity to testify and bring in other witnesses who can also testify that she did not receive notice of the sale. And he talks about how the statute says, well, if you don't get notice, you have to tell us within a certain period of time, or you can't say that you didn't get notice. But let's talk about how that would work. So my client, who is pro se, doesn't get notice, doesn't know anything about the sale. And then is told when she gets to court, sorry, you can't contest the lack of notice because you did not file your objection to lack of notice within a certain period of time after the notice you didn't get. 14th Amendment due process exists to prevent absurdities like that. Because that argument is, at its core, circular. We are not simply alleging that something got lost in the mail. We are saying that from the time that the moratorium on foreclosures ended, after the pandemic, my client got no notice of any kind at all. And the fact that she was previously defaulted does not mean that she has waived any objection to the sale that comes after that. That kind of holding would be a massive, massive blow to everyone who is trying to navigate the system pro se. And there are thousands of people navigating the system pro se right now. I thank you for your consideration. And I ask that you treat my client the way you would want to be treated in her situation. Thank you very much. The court thanks both sides for spirited argument. We will take the matter under advisement and render a decision in due course.